SNODGRASS *v.* POCAHONTAS.

4-3691

Opinion delivered October 22, 1934.

*A. J. Cole,* for appellant.

*W. J. Schoonover* and *Walter L. Pope,* for appellees.

MEHAFFY, J.   In the year 1917 there was organized in the city of Pocahontas, a city of the second class, an improvement district for the purpose of installing a waterworks system.   Benefit assessments against the real estate within the district were levied, bonds sold, and the waterworks installed.   A sufficient amount of benefit assessments were collected, to retire the bonds, and the last bond matured and was paid in 1927.   Upon the completion of the waterworks system, it was taken over and managed by the city council of the city of Poca-

hontas. The users of water paid rentals, the same being paid into the treasury of the city of Pocahontas.

The State Board of Health issued an order requiring the city to remove the intake pipe, through which the water was taken from Black River, to a point some distance upstream from where it was located. The order of the Board of Health was issued for the purpose of obtaining pure water, water that had not become polluted by waste matter reaching the river from the city.

It is claimed that the machinery used in the pumping plant installed in 1917 is antiquated, worn, and needs replacement, and that when the intake pipe is moved upstream, it will be necessary to build a new pumping house and install new machinery therein; that these new constructions and changes will cost approximately $31,500.

The city of Pocahontas has arranged to issue bonds to be retired solely from the rentals collected from the waterworks plant. An ordinance was passed pursuant to the provisions of act 131 of 1933. The ordinance provides that the value of the present system is $8,000, and the value of the new construction is $31,500, making a total value of $39,500. This ordinance binds the city to set aside for use solely for the purpose of paying said bonds, 79.75 per cent. of the revenues derived from the waterworks system, it being estimated that this percentage is the proportion of value that the improvements have to the value of the existing plant.

The city of Pocahontas is about to borrow money from the Federal Emergency Administration of Public Works of the United States of America, and issue bonds, pledging the rentals to be received from the users of water, for the payment of said bonds.

Suit was brought in the Randolph Chancery Court praying that a permanent injunction be issued enjoining and restraining the appellees from proceeding under said ordinance, and from taking any further steps looking to the issuance of revenue bonds under act 131 of 1933.

The appellees filed a general demurrer which was sustained by the court, and the complaint dismissed, and the case is here on appeal.

As stated by the appellant, the question before the court is whether or not the city of Pocahontas has authority under act 131 of 1933, to construct the betterments and improvements contemplated by the city.

Section 1 of said act 131 provides: "That any city or incorporated town in the State of Arkansas may purchase or construct a waterworks system or construct betterments and improvements to its waterworks system as in this act provided." The said act then provides for the manner in which the city may purchase or construct the improvements.

It is contended by the appellant that the authority of the city of Pocahontas to purchase or construct the improvements does not exist, and several cases are cited and relied on. We do not discuss these cases for the reason that said act 131 expressly authorizes cities to construct waterworks systems and betterments and improvements, and prescribes the manner in which these things may be done, and this act was held constitutional, except as to the provision of the act exempting the bonds from taxation, and that provision was held void.

Attention was called to the provision in the statute making the provisions and sections of said act severable, and the court said, speaking of acts 131 and 132 of 1933: "These acts are both complete and capable of being executed in accordance with the legislative intent expressly declared in the section quoted, and the acts must therefore be upheld, notwithstanding this exemption and its consequent unconstitutionality as applied to persons or agencies whose property would otherwise be subject to taxation." *Jernigan* v. *Harris,* 187 Ark. 705, 62 S. W. (2d) 5.

It is next contended by the appellant that the city of Pocahontas has no authority because it does not own and operate the system. It is admitted that, if the city had acquired the waterworks system and had title thereto, and were operating the same, there could be no question of its authority to proceed to construct improvements and betterments. The waterworks system of Pocahontas was installed and operated by an improvement district in 1917. Bonds were issued and the prop-

erty assessed for the purpose of paying the bonds, and the bonds were all paid, the last one being paid in 1927. The city of Pocahontas in 1927 took over the waterworks system, and has operated it since that time, and the betterments and improvements, which are entirely new, are estimated to be 79.75 per cent of the value of the entire plant.

Among other things, act 131 provides: "Whereas, there are now in use works (owned by others than municipalities) of the character authorized by this act which require immediate repairs, improvements and/or extensions that can not be effected or accomplished because of the inability to finance same under existing laws, though the necessity for such repairs, improvements and extensions menaces the public health and safety; and this act provides a method whereby such works could be acquired by municipalities, and the necessary repairs, improvements and/or extensions promptly made."

It has been held by this court that when improvements of this kind have been completed, they become subject to the control of the city, and that the board of commissioners thereafter have no authority to bind itself as a board. In other words, the improvement was controlled by the city, and it had a right to make improvements, betterments and additions, just as it had authority to construct a new plant.

In the case of *Mississippi Valley Power Co.* v. *Board of Improvement Waterworks Dist. No. 1*, 185 Ark. 76, 46 S. W. (2d) 32, the court held against the contention of the appellant here.

Besides, the debts of the improvement district all having been paid, and the system turned over to the city in 1927 and operated by the city since that time, the improvement district had no interest whatever in it. But, if it had an interest, the city was maintaining the plant as well as operating it, and the improvements and betterments involved here constitute a separate, distinct improvement, which the city had a right to make.

Section 10 of act 131, among other things provides for acquisition or construction of a waterworks system in a municipality which has not theretofore owned and

operated a waterworks system, that in the ordinance declaring the intention to issue bonds, and providing details in connection therewith, the council shall provide, find and declare in addition to the other requirements set out in the statute, the value of the then existing system and the value of the property proposed to be constructed, and the revenues derived from the entire system when the contemplated betterments and improvements are completed shall be divided according to such values and so much of the revenue as is in proportion to the value of such betterments and improvements, as against the value of the previous existing plant as so determined, shall be set aside and used solely and only for the purpose óf paying the revenue bonds issued for such betterments, together with costs, etc.

The council of Pocahontas made the estimate of the value of the properties, and the ordinance provides for setting aside and using solely for the payment of the new improvements, that per cent. of the revenue which the new construction bears to the whole property.

The ordinance provides for the issuance of the proper revenue bonds or other evidence of indebtedness exclusively against the plant and income therefrom, and further provides that it will set aside and use only and solely for the purpose of paying revenue bonds, 79.75 per cent. of the revenue derived from the waterworks system. In other words, they provide for issuing evidence of indebtedness to be paid solely from the revenue of the new improvement. That is, they take that per cent. of the revenue which the value of the new improvement bears to the value of the whole plant, and pledge that to secure the payment of the indebtedness.

Amendment No. 13 to the Constitution provides, among other things, that a city or town shall never issue any interest-bearing evidences of indebtedness except bonds to pay for indebtedness existing at the time of the adoption of the Constitution of 1874, but provides that cities of the first and second class may issue, by and with the consent of a majority of the qualified electors of said municipality voting on the question at an election held for the purpose, bonds in sums and for the purpose approved

by such majority at such election as follows. It then provides among other things, for purchasing, extending, improving, enlarging, building or construction of waterworks, etc.

But these bonds can be issued only by and with the consent of a majority of the qualified electors voting at the election.

Constitutional provisions should receive a reasonable construction, the purpose being to ascertain the meaning of the framers of the provision of the Constitution, and the intention of the electors in adopting the provision. It was manifestly the intention of the framers of Amendment 13 to prohibit cities and towns from issuing interest-bearing evidence of indebtedness, to pay which the people would be taxed, or their property appropriated to pay the indebtedness, or any indebtedness that placed any burden on the taxpayers. It was not the intention to prohibit cities and towns from making improvements and pledging the revenue from the improvements so made alone to the payment of the indebtedness.

"The fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of the framers and of the people who adopted it. The court therefore should constantly keep in mind the object sought to be accomplished by its adoption, and the evils, if any sought to be prevented or remedied." 12 C. J., 700.

The construction of a constitutional provision should be uniform, so that it will operate at all times alike and in the same manner with reference to the same subjects. 12 C. J., 718.

Amendment No. 13 has heretofore been construed by this court, and it has been held that where the debt is to be paid out of the receipts derived from the operation of the system, and not out of funds belonging to the city, the indebtedness is valid and not prohibited by Amendment 13. *McCutchen* v. *Siloam Springs*, 185 Ark. 846, 49 S. W. (2d) 1037; *Jernigan* v. *Harris, supra*. Therefore the pledge by the city of Pocahontas of the revenue derived from the improvement to pay the price of the improvement is valid.

It appearing that the improvement is to be paid solely from revenue derived from the improvement, the case must be affirmed.