BOURLAND *v.* FORT SMITH.

4-3801

Opinion delivered February 4, 1935.

*George W. Dodd,* for appellant.

*Fadjo Cravens* and *Daily & Woods,* for appellee.

BUTLER, J. The Fort Smith Waterworks District comprises the entire territorial limits of the city of Fort

Smith. It was organized under the provisions of special act No. 336, Acts of 1921, to acquire the waterworks system previously constructed in the city, and to enlarge and maintain the same. In order to put into effect the purposes for which it was organized, benefits on the real property in the city were assessed and levied, and bonds issued and sold in the aggregate sum of $1,339,000. Some of these benefits have been collected, but a considerable amount of money used to pay the bonds with interest as they matured was derived from the net revenue of the waterworks, so that it has not been necessary to collect all of the yearly installments of assessed benefits. The outstanding and unpaid bonds amount to $884,000, which, with interest, raises it to the present total of $1,100,000. The city of Fort Smith, after the waterworks were constructed and extended, took over the operation of the system, fixing, charging and collecting the water rentals, and, from the revenue thus derived, paying the operating expenses, the remainder being applied to the retirement of the bonds.

Recently, because of limitation of its power, the Waterworks District entered into à contract with the city authorizing the city to extend and enlarge the operating system, and to issue revenue bonds to pay for the cost of the improvement, withholding as operating expenses a sufficient amount of the income to pay for the bonds issued as they matured. By this contract the city undertook the construction of the improvement, and the payment of the costs thereof and the necessary incidental expenses from the proceeds of the revenue bonds, and, when the cost of the improvement had been paid, to convey the new improvement to the Waterworks District.

Thereafter, the city and the Waterworks District, in furtherance of the plan to enlarge the system and change the source of the water supply, entered into an agreement with the United States Government functioning through the Public Works Administration by which the Government agreed by loan and grant to aid the city in financing the project. It agreed to take $1,270,000 of the revenue bonds of the city bearing interest at four per

cent., and to donate the further sum of $456,000 in aid of the project. Under the contract the bonds were to be issued under the terms and limitations prescribed by act No. 131 of the Acts of 1933, and were to be paid solely out of the revenue derived from the sale of water to consumers, and secured by statutory mortgage on the new construction only.

Fagan Bourland is a citizen and taxpayer and the owner of real property within the limits of the Waterworks District. An assessment of benefits has been levied against his real estate, and he is a patron of the waterworks system owned by the district and operated by the city. This suit was instituted by him against the city, its commissioners and others, to enjoin the city from carrying out its contract for constructing the proposed improvement and from issuing revenue bonds. He alleged in his complaint that by the proposed project the source of water supply was to be changed at a great and unnecessary expense; that the contemplated project was an abuse of discretion, in that the present water supply was wholesome and adequate, and that, by carrying out the proposed project, a considerable portion of the physical properties comprising the water plant would be abandoned, thus tending to impair the security of the mortgage given to secure the original bond issue and thereby constituting a breach of contract on the part of the Waterworks District with its bondholders. The complaint further alleged that the city and district were without power to enter into the contract with each other, and with the Public Works Administration, and that said contracts are illegal and void.

Issue was joined by answer and, at the hearing, many witnesses testified. At the conclusion of the testimony the court dismissed the complaint for want of equity and declared the facts found by him to be as follows: "The court finds that the water furnished by the city through said system has been and is now taken from the Poteau River; that the Poteau River and the water therefrom was at one time a fairly satisfactory source of supply; that, due to conditions over which the city

and its officials and the Waterworks District and its officials have no control and cannot remedy, the Poteau River, and the water therefrom have become unsuitable as a source of supply.

"That these conditions have become more and more aggravated during the last eight years, and that for a number of years said water has become unfit for human consumption and domestic, industrial and commercial use over long periods of each year; that this condition of the Poteau River, and the water therefrom cannot be remedied and will continue to grow worse; that the supply of water available from the Poteau River is at times inadequate.

"That, under the limitations contained in the act creating the Fort Smith Waterworks District, said district does not have funds and borrowing capacity sufficient to permit it to obtain a new suitable source of supply; that, because of the character of said water and its contamination, the city necessarily expends each year unusually large amounts for clarification and treatment, thereby reducing the net income derived from operation, and that the gross revenue is decreasing because of the use of other water by consumers brought about by the character of water furnished by the city; that in operating said plant the city is necessarily put to a large expense in pumping said water from the river to settling basins and from the settling basins to the storage basins; that, because of the character of the water now furnished, the inhabitants of the city are being put to an enormous expense each year in buying bottled water to be used for domestic consumption, and industries and commercial establishments are being handicapped and put to large expense.

"That the city and its officials operate said system in the capacity of trustee for said district and the taxpayers thereof, and are likewise charged with the duty to the inhabitants in said city with reference to the furnishing of suitable water. That there is a positive duty on the part of the city and its officials to furnish pure, suitable water, if it is within the power of the city to do so.

"That the project attacked by the complaint is the only feasible, practical and legal method by which pure suitable water can be furnished within any reasonable time."

On appeal, as in the trial court, appellant (plaintiff) contends that the proposed construction is an abuse of discretion, and that the contracts are illegal. It would serve no useful purpose to review and state the testimony of the numerous witnesses. It is sufficient to say that the preponderance of the evidence sustains the finding of fact made by the court. There was therefore no abuse of discretion, but the proposed action of the city is made imperative by the existing conditions relative to the present water supply. Under its delegated power, one of the paramount duties of the city is to protect the comfort and well being of its citizens. To do this it seems plain that the present unwholesome water supply must be abandoned and pure water obtained. It is shown by the undisputed evidence that the contemplated new source of supply is the most available affording pure water in abundance, and that the cost thereof, while considerable, is such that it can be paid from the savings and increased revenue, probably leaving a sufficiency to retire the first issue of bonds without recourse on the benefits assessed to pay for the first construction.

The authority for the proposed construction is found in the provisions of act No. 131 of the Acts of 1933. That act authorizes cities and incorporated towns to purchase or construct waterworks systems or improvements thereto. By § 2 of the act it is made cumulative to the authority to purchase and construct waterworks systems, or betterments and improvements thereto, under existing laws. In the same section the term "waterworks" is defined to include a system in its entirety, or any integral part thereof, including the appliances used in its distributing system and a means by which the water may be impounded, retained and distributed. The act further provides for the issuance and sale of bonds and restricts their payment out of revenues derived from the operation of the waterworks system. It provides for a statu

tory mortgage lien in favor of the bondholder upon the waterworks system acquired or constructed from the proceeds of bonds issued under the authority of that act. The constitutionality of this act was upheld in the case of *Jernigan* v. *Harris,* 187 Ark. 705, 62 S. W. (2d) 5.

The appellant insists that the Waterworks District was created for the sole purpose of acquiring and owning waterworks systems and was given authority only, by the act under the provisions of which it was created, to enlarge, improve and maintain a waterworks system; that its sole authority must be found within the creative statute, and no power not therein given may be implied, and that therefore the district has no authority to sell, lease, or otherwise dispose of the waterworks system, or to abdicate its functions or hand over its system to the city, which, as appellant claims, the contract contemplates. He insists that the only authority the city has, or can have, is to operate the system when completed, to fix and collect uniform water rates and, from the gross income thus derived, to pay the operating expenses, paying over the remainder of the revenue, if any, to the Board of Improvement of the Waterworks District.

The answer to this contention is that the district is not attempting to dispose of the waterworks system or to abdicate its functions, nor is the city attempting to divert any of the revenue. It is argued that the construction of the reservoir for impounding water, thus creating a new source of supply, is a capital investment and is not "operating expenses" within the meaning of the statute. This argument overlooks the fact that the present revenues will not be affected, but that the new source of supply is to be paid for out of savings in cost of operation and increased rates. The purpose of act 336 of 1921 and subsequent legislation was to afford the inhabitants of a city sufficient wholesome water, and should be construed so as to effectuate that purpose. A narrow and scholastic definition of the term "operating expenses" would justify the appellant's position, but it should be liberally interpreted and applied. It appears from the evidence that the water system, as now constituted, can-

not be operated as contemplated when it was constructed, and, unless a new source of supply is procured, its operation must eventually cease. Therefore the expense incurred, to be paid as heretofore noted, if practical effect to the act is given, must be said to come within the term "operating expenses."

Besides, it would seem that the construction of the dam, the impounding of waters of Clear Creek and their transmission through mains to the city from which point they will be distributed by the system owned by the Waterworks District, when properly considered, may be deemed to be a separate construction, although tied into the operation system of the district. This is made clearer when the obligation of the city is remembered by which it is to convey to the district the new improvements when the money borrowed to construct the same has been paid.

This question appears to have been settled adversely to the contention of appellant by the case of *Snodgrass v. Pocahontas,* 189 Ark. 819, 75 S. W. (2d) 223. In that case the waterworks system of the city of Pocahontas had been constructed, and was owned by an improvement district. The construction had been paid for by the use of money borrowed and obtained through the sale of bonds. Betterments were assessed and the bonds paid off in full. The city, by virtue of act No. 131, *supra,* was proceeding to change the source of water supply, to borrow money from a Federal agency to be used in the new construction, and to issue its revenue bonds to be paid out of the revenue derived from the waterworks system. On attack, the ordinance seeking to put the purpose of the city into effect was held to be valid.

In disposing of the contention that the city of Pocahontas had no authority to sell bonds and construct the improvement because it did not own and operate the system, the court said: "It is admitted that if the city had acquired the waterworks system and had title thereto, and was operating the same, there could be no question of its authority to proceed to construct improvements and betterments. The waterworks system of Pocahontas was installed and operated by an improvement

district in 1917. Bonds were issued and the property assessed for the purpose of paying the bonds, and the bonds were all paid, the last one being paid in 1927. The city of Pocahontas in 1927 took over the waterworks system and has operated it since that time, and the betterments and improvements, which are entirely new, are estimated to be 79.75 per cent. of the value of the entire plant." Citing the case of *Miss. Valley Power Co.* v. *Bd. Imp. Waterworks Dist. No. 1,* 185 Ark. 76, 46 S. W. (2d) 32, the court further said: "It has been held by this court that when improvements of this kind have been completed, they become subject to the control of the city, and that the board of commissioners thereafter have no authority to bind itself as a board. In other words, the improvement was controlled by the city, and it had a right to make improvements, betterments and additions, just as it had authority to construct a new plant."

Appellant seeks to distinguish this case from the case at bar on the proposition that there the waterworks system had been installed and all of its debts paid, and the system therefore belonged to the city. This distinction would appear not to have influenced the decision of the court, for, on that proposition, after noticing that the debts had been paid, the court said: "But if it (the improvement district) had an interest, the city was maintaining the plant as well as operating it, and the improvements and betterments involved here constitute a separate distinct improvement which the city had a right to make."

We also call attention to an act of the present session of the Legislature, approved January 23, 1935, now in effect, because of a proper emergency clause duly enacted. Act No. 3, § 1, of that act amends § 1 of act No. 131, *supra,* so as to read as follows: "Any city or incorporated town in the State of Arkansas may purchase or construct a waterworks system, or construct betterments and improvements to its waterworks system, or to a system owned by a waterworks district and operated by such city or town, as in this act provided. Any city now or hereafter operating a waterworks system owned, con-

structed, or acquired by a waterworks district is authorized to use the revenue derived from operating such waterworks system in paying revenue bonds and the interest thereon issued under and pursuant to the terms of this act (and for that purpose may create a sinking fund) and other items prescribed by this act, and operating expenses, and maintenance and improvement of the existing system owned by the district. The balance of the revenue remaining shall be paid by the city to said district to be used in retiring obligations of said district."

It follows that the decree of the trial court is correct, and it is therefore affirmed.