The Honorable Gladys Watson State Senator Route 1, Box 99 Monette, AR 72447
Dear Senator Watson:
This is in response to your request for an opinion on the validity of the Paragould-Greene County Sanitary Landfill entering into lease-purchase agreements to obtain additional land and equipment. Specifically, you have enclosed a letter from Mr. Eugene Widmer, chairman of the landfill, who explains that the landfill is an agent of the city and county, and that the initial land for the landfill was purchased through a federal grant, and that the landfill operates through the collection of "gate fees" only. Mr. Widmer states that no tax monies are used to support the landfill.
We should note that you have enclosed no prospective lease-purchase agreements, and as such we will not be able to answer your question with reference to a specific contract. You have stated in your request that the bank will not lend the landfill money without this opinion, but it is unclear from Mr. Widmer's letter exactly how the proposed lease-purchase transaction is to be structured, and whether in fact a bank will be involved, and what the security is to be for any loan or "lease" agreement. This being the case, we will address your question in general terms, setting out the relevant law, but cannot make any definitive conclusions about any particular transaction.
The problem of governmental entities entering into lease-purchase agreements has given rise to several opinions by this office. See Opinion Nos. 88-105, 84-104, and 80-170, copies of which are enclosed. Unfortunately, there are no pertinent Arkansas Supreme Court cases on the question. The relevant Arkansas constitutional provision is Art. 16, 1*, which provides as follows:
 Neither the State nor any city, county, town or other municipality in this State shall ever lend its credit for any purpose whatever; NOR SHALL ANY COUNTY, CITY OR TOWN OR MUNICIPALITY EVER ISSUE ANY INTEREST BEARING EVIDENCES OF INDEBTEDNESS, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution of 1874, and the State shall never issue any interest-bearing treasury warrants or scrip. (Emphasis added.) ___________. * It should be noted that Amendment 13 superseded Art. 16, 1, but was itself superseded by Amendment 62 according to the Arkansas Supreme Court's ruling in City of Hot Springs v. Creviston, 288 Ark. 286, 705 S.W.2d 415 (1986). As noted in the publisher's notes to Art. 16, 1, however, the court in Creviston held that Amendment 62 did not intend to repeal the original first Section of Art. 16, 1, which contains the prohibition on interest bearing evidences of indebtedness. The provision may, however, as will be discussed infra, be superseded to some extent by Amendment 65. ___________.
Although our Arkansas Supreme Court has not addressed the issue, lease-purchase agreements can be violative of the above provision, because many are not truly "lease" agreements but are actually conditional sales contracts with interest. As such, they may be "interest-bearing evidences of indebtedness" under Art. 16. 1 above. Whether a particular lease-purchase agreement is in actuality a "conditional sales contract" is a question of fact which will be decided based upon the terms of the "lease." For cases holding that lease-purchase agreements are in actuality conditional sales contracts in a usury context, see Hill v. Bentco Leasing Inc., 288 Ark. 623, 708 S.W.2d 608 (1986), and Bell v. Itek Leasing Corp., 262 Ark. 22, 555 S.W.2d 1 (1977).
Although our Supreme Court has never held a lease-purchase agreement violative of Art. 16, 1, at least one Arkansas chancellor has. Chancellor Brantley in the Fourth Division of the Pulaski County Chancery Court has held that a particular lease-purchase agreement has violated this constitutional provision. See John W. Hall, Sr. v. Pul Co. Ark. and Continental Telephone Co. of Ark., Inc., Memorandum Opinion and Order No. 86-212, dated April 23, 1987. The issue before Chancellor Brantley, however, was distinct from the issue your question presents. In that case, the funds to pay the lease-purchase agreement were general tax dollars, and not special monies such as the "gate fees" in issue here. This fact forms the crux of your question, which is whether the payment of an obligation by a city or county from special revenues rather than tax monies exempts the transaction from the prohibition in Art. 16, 1. We have found no satisfactory Arkansas case law on this precise point.
We are aware, however, of several Arkansas precepts surrounding the question. We do know that Art. 16, 1 does not apply to improvement districts. See Fitzgerald v. Walker, 55 Ark. 148,17 S.W. 702 (1891); Nakdimen v. Bridge Dist., 115 Ark. 194,172 S.W. 272 (1914), and Bell v. Fulkerson, 291 Ark. 604, 727 S.W.2d 141
(1987). This is because an improvement district is not a "municipality" or the agent of a municipality. It is not due to any special nature of the funds involved. We also know that formerly, under Arkansas case law, bonds which were issued and payable from special funds or revenues were not subject to this proscription. See Snodgrass v. Pocahontas, 189 Ark. 819 (1934), overruled by City of Hot Springs v. Creviston, 288 Ark. 286,705 S.W.2d 415 (1986). The issue is now governed by Amendment 65 to the Arkansas Constitution, which will be discussed at length later.
The problem your question presents appears to be novel in that it does not involve an improvement district (the landfill is actually an agent of the city and county), and it does not involve the issuance of bonds. Your question thus is whether, if the lease-purchase agreement does indeed have an interest factor involved, Art. 16, 1 stands as a barrier to its payment even though the funds expended are not tax dollars but special funds or "user fees." In the absence of satisfactory case law on point, we feel constrained to apply the plain meaning of the constitutional provision in issue. This sentiment is prompted in part by language used in Snodgrass, supra, which was overruled in Creviston, supra. The court in Snodgrass stated:
It was manifestly the intention of the framers of Amendment 13 to prohibit cities and towns from issuing interest-bearing evidence of indebtedness, to pay which the people would be taxed, or their property appropriated to pay the indebtedness, or any indebtedness that placed any burden on the taxpayers. It was not the intention to prohibit cities and towns from making improvements and pledging the revenue from the improvements so made alone to the payment of the indebtedness.
189 Ark. at 824.
In response to this passage, the court in Creviston stated that: "The Snodgrass opinion did not explain why it was manifest that the framers of Amendment 13 did not really mean what they said."288 Ark. at p. 289.
The fact is that Art. 16, 1 simply provides that "nor shall any county, city or town or municipality ever issue any interest bearing evidences of indebtedness. . . ." (There have been some exceptions made for bonds, see infra.) The provision does not say that no county, city, town or municipality may issue any interest bearing evidences of indebtedness the payment of which is to be made from general tax dollars. Additionally, we do not find that the case of Mississippi Valley Power Company v. Board of Improvement, Water Works District No. 1, 185 Ark. 76 (1932) stands for a contrary conclusion. Cf. Opinion No. 80-170. As Chancellor Brantley noted, Mississippi Valley was not brought under Art. 16, 1 and thus can be given no weight on the construction of that provision. Memorandum Opinion, supra, at p. 12. In any event, Mississippi Valley involved an improvement district, which would be excluded from the operation of the provision from the outset.
It is thus my opinion that under Art. 16, 1, the landfill would be prohibited from entering into a lease-purchase agreement which in actuality was a conditional sales contract with an interest factor. This conclusion, however, does not take into account the possible applicability of Amendment 65 to the Arkansas Constitution. As Chancellor Brantley noted in her order:
 In an earlier case, the Court stated that `there is no authority in this state for the payment of interest at all by counties.' Quinn v. Reed, 130 Ark. 116, 121-22.
That statement is no longer entirely true since the advent of Amendment 64 (proposed Amendment 67), (now Amendment 65) which permits the issuance of revenue bonds, expansively defined as indebtedness payable out of any source other than assessments for local improvements and taxes. Section 4 of the Amendment appears to authorize interest. While no evidence was offered in this case as to the source of the funds the County is using to pay for the telephone system, that question need not be addressed here as Amendment 64 (65) was enacted and became effective after Contel and the County entered into their agreement and thus does not apply to that agreement. The court invited the parties to address the applicability of Amendment 64 (65); receiving no response to that request, the court assumes the parties do not consider it controlling either. That leaves the rule of Quinn, supra, still in force in the present case. Memorandum order, supra at p. 9
Amendment 65 defines "revenue bonds" as follows:
 The term `revenue bonds' as used herein shall mean all bonds, notes, certificates or other instruments or evidences of indebtedness the repayment of which is secured by rents, user fees, charges, or other revenues (other than assessments for local improvements and taxes) derived from the project or improvements financed in whole or in part by such bonds, notes, certificates or other instruments or evidences of indebtedness, from the operations of any governmental unit, or from any other special fund or source other than assessments for local improvements and taxes.
This definition is so broad as to include any "evidence of indebtedness the repayment of which is secured by . . . user fees." This language would arguably include a lease-purchase agreement entered into by the landfill which in actuality is a conditional sales contract and which is secured only by the user fees collected from customers.
Section 4 of the Amendment appears to contemplate interest on the "revenue bonds." It states in pertinent part that:
 This amendment shall be the sole authority required for the authorization, issuance, sale, execution and delivery of revenue bonds authorized hereby; provided, however, that the rate of interest on revenue bonds shall not exceed the maximum authorized by Amendment No. 60 to the Constitution of the State of Arkansas or any similar provisions hereafter adopted.
Additionally, the publisher's note to Amendment 65 states that "this amendment may supersede Const. Art. 16, 1, with respect to prohibitions against bond issuance. . . ."
There are no Arkansas Supreme Court cases interpreting this amendment or the definitions contained therein. It is my opinion, however, that if the landfill were to enter into a lease-purchase agreement (with an interest provision which would ordinarily be violative of Art. 16, 1) and the repayment of the agreement was secured solely by user fees, and in no way, not even contingently, by assessments for local improvements or taxes, the agreement might fall within the definition of a "revenue bond" under Amendment 65, and would thus be allowable on that basis. Of course, we are without the benefit of Arkansas case law on the issue, but believe the language of the Amendment itself leads to this conclusion. If, in fact, a lease-purchase agreement could be termed a "revenue bond" under Amendment 65, it would be subject to all the conditions and laws promulgated by the General Assembly governing the issuance of "revenue bonds." See specifically A.C.A. 19-9-606 and 19-9-607 (Supp. 1989).
It is thus my opinion that although in certain circumstances a lease-purchase agreement entered into by the landfill would be violative of Art. 16, 1 of the Arkansas Constitution, it is also possible that in certain circumstances the execution of such an agreement by the landfill could give rise to a "revenue bond" under Amendment 65, and would be authorized so long as all the conditions of that Amendment and other relevant law are met. The determination as to whether a particular lease-purchase agreement would fall within the former or latter category will have to be made with the terms, conditions and particular provisions of each transaction in mind.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
_____________ NOTE: Opinions 88-105, 84-104, and 80-170 referred to above are in the system.