BLACK *v.* MORTON.

5-2272 343 S. W. 2d 437

Opinion delivered February 27, 1961.

*Alston Jennings, Sol Russell, C. Byron Smith, Jr.* and *Reed W. Thompson,* for appellant.

*Langston & Walker* and *L. A. Hardin,* for appellee.

PAUL WARD, Associate Justice. In this litigation the will of Ward M. Black, deceased, is being contested on the ground of forgery. Black died November, 1958 and letters of administration were taken out shortly thereafter. Numerous steps were taken and orders entered relative to the administration of the estate over a period of some ten months before a purported will of the deceased was found and offered for probate on October 1, 1959 by one of the legatees. Then, on October 20, 1959, the brother and sole heir of the deceased together with a nephew of the deceased filed the contest heretofore mentioned.

After extensive hearings, the trial court held the will valid, and the contestants now prosecute this appeal seeking a reversal.

At the outset we are met with a Motion by appellees (the proponents of the will) to dismiss the appeal on the ground that appellants have filed only a partial record and failed to designate the points relied on for a reversal as required by statute. We see no merit in said Motion under the facts in this case.

As previously stated, this is a will contest, incidental only to the matter of the administration of the estate of Ward M. Black. It is appellees' contention that the appeal record is a "partial record" since it does not contain 48 orders, notices, affidavits, petitions, bonds, etc., all dealing with some feature of the administration of the estate but in no way bearing on the will contest. Many of the above items were filed before the will was offered for probate, and others were filed after the notice of appeal was given by appellants on June 14, 1960. We find that appellants have included in their record all matters pertaining to the will contest, and that, therefore, it is a complete record and not a *partial* record. If it were a *partial* record (as contemplated by the statutes) then appellants would have had to designate the points relied on under Ark. Stats., § 27-2127.5. A portion of this section reads: "If the appellant does not designate for inclusion the complete record all the proceedings and evidence in the *action* ... " (Emphasis supplied.) We think the word "action" as used above means, in this case, the will contest, and that it cannot reasonably be interpreted to include all matters relating solely to the administration of the estate. This interpretation is supported by Section 16 of Act 140 of 1949, often referred to as the Probate Code. (See: Ark. Stats., § 62-2016, sub. c). The above section recognizes a certain measure of separation between the administration of an estate on the one hand and the probation of a will on the other, where both features are united in the same proceeding.

For reasons hereafter appearing we attempt no final determination on the merits of the issue involved, and we accordingly set out only such a general summa-

tion of the facts as is necessary to clarify the conclusion we have reached.

The deceased left an estate, both real and personal, amounting to approximately $100,000. The purported will left real estate valued at about $10,000 to two cousins, real estate valued at about $6,000 to a brother (heretofore mentioned); securities valued at about $4,000 to a nephew (heretofore mentioned); one thousand dollars ($1,000) in cash to each of two sisters-in-law, and; a drug store (with contents) and cash valued at about $75,000 to one Cecil E. Morton. Morton, who had once been convicted of a felony, was no relation of the deceased but he had worked for the deceased in the drug store for several years, first drawing $35 per week and later $45 per week, and was so employed at the time of the death of Ward M. Black.

On behalf of the proponents of the will there was testimony by the two attesting witnesses that the will was signed by the deceased in his drug store, and a handwriting expert and other lay witnesses were of the opinion that the name of the deceased on the purported will was genuine, and a typewriter was exhibited which, as both sides agree, was used to type the body of the will. It is also conceded that the purported will is a carbon copy, both as to the body of the will and all signatures thereon.

On behalf of the contestants an expert witness, who made and exhibited numerous enlarged pictures of the purported signature of the deceased on the purported will together with admitted signatures, gave as his opinion that said purported signature of the deceased was a forgery. It was also shown that the deceased always (with one exception) signed his name as ''Ward M. Black'' while the signature on the purported will was ''W. M. Black.'' The exception mentioned above relates to Order Forms for Opium furnished the deceased by the U. S. Internal Revenue Department. There appear in the record as exhibits five used books of these forms containing carbon copies of the originals which had

been issued. All these carbon copies show the signature ''W. M. Black,'' presumably because the books were issued that way. One or two of these carbon copies, which are numbered in numerical sequences, are missing, and the originals have not been located, or at least they are not in the record. The signatures on these copies and the signature on the purported will bear a remarkable resemblance. There are other facts and circumstances which appellants contend indicate forgery.

Near the end of the trial appellants offered to introduce certain newly discovered evidence relating to the typewriter (mentioned above) tending to shed new light on the vital question involved. The trial court refused to allow appellants time to produce this evidence, and we think, under the circumstances, this was an error which calls for a remand. The ex-wife of the principal beneficiary testified that she loaned the typewriter to the deceased about the first of July, 1958 and got it back in November of that year. The proffered evidence was to the effect that this could not possibly have occurred. Since the testimony is so conflicting and the implication so personal, we feel that justice demands further development of the case along the lines indicated and in any other respect desired by either side.

On remand the trial court will have an opportunity to reexamine its original decree in the light of any new testimony which may be considered along with the record before us at this time.

The Motion is denied and the cause is remanded for the reason and purposes above stated.

HOLT, GEORGE ROSE SMITH and ROBINSON, JJ., dissent.

ROBINSON, J., dissenting. Cases of this kind are tried *de novo* in this Court, and from the record each Judge reaches his own conclusions as to the facts. I am thoroughly convinced that the purported will is a forgery. I would, therefore, without any further ado, reverse the judgment with instructions to find against the will.

In the first place, the alleged will was written on a typewriter; it is not the original, but is a carbon copy; likewise, the signatures of the purported maker and witnesses are carbon copies.

There is no substantial evidence that Mr. Black was especially fond of his employee, Morton, and no reason whatever is shown as to why Mr. Black would give Morton the great bulk of his estate in preference to his own relatives.

The alleged will is not properly punctuated, and in several places small letters are used where there should be capitals. "Securities" is spelled "security,s." It appears that in all probability Mr. Black had an average education, but there is nothing to indicate that he knew how to use the technical words "devise and bequeath." Those words are not used by laymen, and yet the words were used in the purported will alleged to have been drawn by Mr. Black.

If Mr. Black had written the will in duplicate at his home, as contended by the proponents of the will, and had then carried it to his store, it is not likely that he would have taken the trouble to again place carbon paper between the original and the copy and sign it in that manner and then have the witnesses also sign in that manner. If he had wanted two copies, in my opinion he would have signed the two copies separately.

Although Mr. Black had a typewriter in his drug store, the will was not written on it, but was written on a typewriter found in the possession of the ex-wife of Cecil Morton, the principal beneficiary named in the will. The typewriter was located by proponents of the will, and there is absolutely no explanation of how they knew Mrs. Morton had the typewriter on which the purported will was written.

It is claimed by proponents of the will that Mr. Black gave the will to Hodge, one of the alleged witnesses to it, and told him to keep it between eight months and a year after Black's death and then give it to Clio Thompson,

one of the alleged beneficiaries. There is nothing to indicate why Mr. Black would think that Hodge would outlive him. Of course, if such a thing had happened, and I don't believe one word of it, Hodge could have placed the will anywhere and if he had died first, in all probability the Black will would never have come to light. No sane person would have handled an important will disposing of a vast estate in such a manner, and there is nothing to indicate that Mr. Black was not of sound mind.

Mr. Black died on the 19th day of November, 1958, and this will was not filed for probate until the 1st day of October, 1959. Hodge claims that he kept it a secret that he had the will for such a long time because Mr. Black had instructed him to do so. In my opinion this is not true. In fact, I don't believe the purported will was in existence at the time of Black's death.

A will conceded to be Mr. Black's genuine will of a prior date was found in his safe at his drug store, the place where one would expect to find his will. This will was ineffective because the sole beneficiary predeceased Mr. Black. It was signed "Ward M. Black," not "W. M. Black." Mr. Black always signed his name "Ward M. Black" except on orders for narcotics, and two copies of such signed orders are missing from the files in the drug store.

Charles Andrew Appel, a highly qualified handwriting expert, testified convincingly that the signature of the maker is a forgery.

Perhaps I have expressed my opinion that the will is a forgery in rather strong language, and I feel that I should add that it is perfectly clear from the record that the attorneys in the case have done nothing except what they should have done, and that is to represent their clients to the best of their ability.

For the reasons set out herein, I respectfully dissent, and I am authorized to say that Mr. Justice Holt and Mr. Justice George Rose Smith join in this dissent.