BLACK *v.* THOMPSON, ADM'X

5-3082                                                      372 S. W. 2d 593

Opinion delivered December 2, 1963.

*Alston Jennings, Sol J. Russell, C. Byron Smith, Jr.* and *Reed W. Thompson,* for appellant.

*L. A. Hardin, Carl Langston,* for appellee.

PAUL WARD, Associate Justice. This is the fourth appeal to this Court involving some phase of the Ward M. Black Estate. A brief reference to the three former appeals and some of the pertinent background facts will help to clarify the issues presented on this appeal.

Ward M. Black died November 19, 1958. At the time of his death he owned a drug store, valued at about $75,000, located at 4200 Asher Avenue in Little Rock. He left other property (real and personal) valued at about $30,000. The deceased left no children or other

lineal heirs, and his closest of kin (disclosed by anyone at that time) was a brother, Walter L. Black. Walter died in August 1962 leaving, as his only heir, one son (Walter L. Black, Jr.) who is the appellant on this appeal. Walter L. Black, Jr. was appointed administrator of the estate of Ward M. Black soon after his death. About ten months thereafter a purported will of Ward M. Black was found in which he gave the drug store to Cecil E. Morton, a clerk in the drug store and of no kin to the deceased. The rest of his estate was given, in varying amounts, to his brother (Walter L. Black), to two sisters-in-law, and to two cousins (one of whom is Clio Thompson). Clio Thompson, as executrix, offered the purported will for probate on October 1, 1959.

*First Appeal.* When the court admitted the purported will to probate over the objections of Walter L. Black he prosecuted an appeal to this Court. The issue was whether the purported will was a forgery. We reversed the trial court, and remanded the cause for further development. *Black* v. *Morton,* 233 Ark. 197, 343 S. W. 2d 437—decided February 27, 1961. *Second Appeal.* After another trial the court again admitted the purported will to probate as a valid will. On appeal the issue was the same as on the first appeal, and we held the purported will to be a forgery. *Black* v. *Morton,* 234 Ark. 360, 352 S. W. 2d 177—decided December 18, 1961. On the *third appeal* we affirmed an order of the probate court allowing a fee of $2,500 for the attorneys representing Clio Thompson as administratrix of the estate of Ward M. Black. *Black* v. *Thompson,* 235 Ark. 725, 361 S. W. 2d 753—decided November 19, 1962. It is noted here that the same attorneys who represented Cecil E. Morton on the first and second appeals also represented Clio Thompson on the third appeal and are representing the appellees on this appeal.

*Present Litigation.* As before stated, on December 18, 1961 we held the purported will of Ward M. Black to be a forgery. As things appeared at that time it seemed in order, of course, to close the estate of Ward M. Black. In such event it would have been the duty of Clio

Thompson to make a final accounting and deliver the assets of the estate over to Walter L. Black, Jr. However, as it now appears, certain persons (including Clio Thompson) received information (possibly the latter part of 1961 or the early part of 1962) that Ward M. Black not only had a living brother, Walter L. Black, but also had a living brother, William Edward Black.

At any rate, on August 30, 1962 Clio Thompson, as administratrix of the estate of Ward M. Black, deceased (and others) filed a "Petition for Determination of Heirship" to the estate of the deceased. In this petition it was stated:

(a) She (Clio Thompson) was appointed administratrix in June 1960 and has served constantly since that date; (b) Ward M. Black died intestate on November 19, 1958; (c) since her appointment as administratrix she has conducted an extensive and prolonged search for the heirs to the estate of Ward M. Black; (d) she has finally located the widow and three children of William Edward Black [died March 20, 1962] who was a brother of Ward M. Black and Walter L. Black; (e) the said widow's name is Nannie Black, and the names of the said three children are Floyd Black, Leroy Black (sons) and Mrs. Clifford J. Wilson (daughter).

The above petition was signed and sworn to by Clio Thompson, by the above named widow and by the children of William Edward Black, deceased.

*The prime issue* presented to the trial court was whether William Edward Black was a brother of Ward M. Black. If they were brothers, then it must be conceded that one-half of the estate goes to appellant and that the other one-half goes to appellees as their interests appear—otherwise, all the estate goes to appellant. After an extensive hearing, the trial court held, in effect, that William Edward Black and Ward M. Black were brothers. From the above holding, appellant prosecutes this appeal.

Appellees, by the introduction of census reports, court records, photographs, a family bible, and oral tes-

timony, presented to the court the following history of a Black family.

(a) Matthew Anson Black, in the early 1800s, moved from Georgia to northwest Arkansas—he was married to Lucinda Lowery. (b) Of this union there were born a daughter, *Mary Jane Black,* a son, *Thomas Jefferson Black,* (and four other children). (c) The said Thomas Jefferson Black and *Mary Jane Cooper* were married October 2, 1873—of this union was born one son, *William Edward Black;* they were divorced in 1877, and on April 24, 1884 Thomas Jefferson Black married *Fannie Ross;* to this union were born *Ward M. Black* and Walter L. Black.

Appellant makes no serious effort to disprove the above facts as they relate to a Black family. He does, however, strenuously urge that there is no satisfactory proof that the Thomas Jefferson Black who was the father of William Edward Black is one and the same person who was the father of Ward M. Black and Walter L. Black. In addition, appellant points out certain facts and circumstances which, he says destroy the credibility of appellees' testimony. Briefly, some of these are: (a) Clio Thompson made no mention of a brother, William Edward, when she named the heirs of the deceased at any time during 1960 and 1961 although she was a cousin of the deceased; (b) Clio Thompson said she didn't mention the possibility of another heir (William Edward) until May 1962 although the record shows they were working on the family tree in January and February 1962; (c) Appellees' own testimony shows that Mary Jane Cooper was only thirteen or fourteen years old when she married Thomas Jefferson Black; (d) Although William Edward Black was living in northwest Arkansas during all the extensive litigation over this estate, he never made any claim thereto.

Not overlooking the above suspicious facts and circumstances, we cannot say they are of such force as to conclusively disprove the purported relationship between William Edward Black and the deceased.

It may be conceded that some of these facts (and other facts not mentioned) justify a suspicion as to the good faith of Clio Thompson in her efforts to locate the heirs of the deceased and in her efforts to sustain the validity of the purported will, yet we are unwilling to say they are conclusive proof of her bad faith. It may be pointed out that she was at all times acting on the advice of her attorneys; that she was under no special duty to determine heirship if she thought the purported will was valid, but this duty did arise when the purported will was declared invalid by this Court. It may also be pointed out that appellant (as administrator) had the same duty imposed on him. In all events there is no contention that appellee heirs have been guilty of any misconduct or bad faith and (if they are in fact heirs of the deceased) they should not be penalized for the real or fancied misconduct of someone else.

In addition to the documentary evidence referred to previously, the court heard oral testimony tending to show William Edward Black and the deceased were in fact brothers.

*Clio Thompson* testified that her mother was Roxie Ann Ross who was a sister to Annie Ross who married Thomas Jefferson Black; that she lived within a mile of them and knew them well; that Ward M. Black and Walter L. Black were sons of Thomas Jefferson and Fannie Black; that Thomas Jefferson Black was the son of Matthew Anson and Lucinda Lowery Black; that Thomas Jefferson Black told her he was once married to Mary Jane Cooper and that they had a son named William Edward Black. Appellant admits the force of this testimony but contends it should not be considered because of her conduct and manifest interest. There is, however, other testimony to support the testimony of Clio Thompson. *Anna Hill,* a disinterested witness 74 years of age, testified that her mother was Mary Jane Cooper; that William Edward Black was her half brother; that her mother was married to Thomas Black. Also, corroborating testimony was given by two nephews of Thomas Jefferson Black.

In view of the above and of other testimony and documents found in the record, we are unwilling to say the finding of the trial court was against the weight of the evidence. There are other points urged by appellant which we now consider.

*Excluded testimony.* We see no reversible error in the court's exclusion of certain testimony. Appellant was allowed to question appellees' attorneys to some extent in an effort to disclose the "background" leading up to the filing of the petition for determination of heirship, but the court refused the inquiry to the extent desired by appellant. In our opinion the court's action was proper. The inquiry was irrelevant to the real issue of whether William Edward Black and the deceased were brothers.

*Administratrix fee.* The trial court allowed Clio Thompson a fee of $2,500 as administratrix of the Ward M. Black estate. Appellant contends she is not entitled to any fee because of her alleged bad faith, or in any event, she is not entitled to the amount of $2,500. We are unable to agree with appellant on either count. This Court, on the third appeal, refused to condemn her motives, and we find nothing in this record to compel us to change our minds. It is true that she has apparently been very active in trying to establish the heirship of the appellees but she was acting in conformity with Ark. Stat. Ann. § 62-2914 (Supp. 1961) although she stood to gain nothing from her activities. Neither are we convinced that she is not entitled to the full amount of $2,500. She was not only charged with the duties ordinarily required of a personal representative but she was charged with running the drug store and renting the houses and farmland. In the case of *Saad, Executor* v. *Arkansas Trust Co.*, 225 Ark. 33, 280 S. W. 2d 894, we approved a fee of $5,000 to an executor where the estate was only fifty percent larger than the one here involved. In that case we quoted with approval the following from the case of *Jacoway* v. *Hall*, 67 Ark. 340, 55 S. W. 12,

"Being familiar with the services rendered, the judge, in fixing the allowance could act upon his own

knowledge of their value, and we would not overturn his findings thereon, unless clearly erroneous.''

We cannot here say the trial court was clearly in error in allowing the fee of $2,500.

*Accounting.* We have carefully examined the record and find nothing to show that Clio Thompson, as administratrix, failed to account for all of the assets of the estate that were delivered into her possession. The assets were checked out to her on a list, which detailed each item. The list, signed by her, by the appellant and by the co-administrator, showed a total value of $400 for all the articles. This alone seems to effectively refute the contention that Clio Thompson appropriated valuable jewelry to her own use.

*Appellant's claim.* Appellant filed a petition to be reimbursed for expenses incurred in defending against the forged will. The statement of costs and expenses was as follows:

| | |
|---|---:|
| Charges of various investigators........................$ | 349.32 |
| Charges in connection with examination and testimony of handwriting expert ............................... | 1,070.00 |
| Transcripts for appeals ...................................... | 828.00 |
| Briefs on appeals .............................................. | 827.70 |
| Deposition costs ............................................... | 440.55 |
| Clerk and Sheriff costs ..................................... | 116.60 |
| Travel expense ................................................. | 180.90 |
| Long Distance telephone ................................... | 55.05 |
| Attorney Fees ................................................... | 15,000.00 |
| Total ...........................................................$ | 18,868.12 |

The court refused to allow the claim or any part of it. In doing so, we think the court erred. Appellees do not appear to deny that appellant paid out all the items of expense above tabulated except the last item of $15,000. As to this item they state: ''A probate court has no power or jurisdiction to pay an attorney who renders services to an heir on a private contract.'' We agree that appellant had no right to make a contract for legal

services which was binding on the court. That is the effect of the holding in *Gilleylen* v. *Hallman,* 141 Ark. 52, 216 S. W. 15, and it is also the effect of Ark. Stat. Ann. § 62-2208 a. and e. (Supp. 1961). However, it does not follow that the court, in this instance, does not now have power and jurisdiction to approve appellant's claim. Not only did the trial court have such power under the statute above mentioned, but we think it also had the power under the general doctrine of unjust enrichment. This rule was succinctly stated in *American University* v. *Forbes,* 183 A. 860, 88 N. H. 17, to the effect that a person shall not be allowed to profit or enrich himself unjustly at the expense of another. In this case, as it is now abundantly evident to everyone, the heirs of William Edward Black would not be in court today and they would not have received one penny from the estate of Ward M. Black had not appellant retained competent legal assistance and had he not made costly preparations in contesting the probation of the fraudulent will. Therefore, we think the trial court should have allowed appellant's claim in full to be paid out of the assets of the estate. Upon remand the trial court is directed to enter an order in accordance with what we have just said. Otherwise, the decree of the trial court is affirmed.

Affirmed in part and reversed in part with directions.