CITY OF HOT SPRINGS; HOT SPRINGS
ADVERTISING & TOURIST PROMOTION
COMMISSION; ARKANSAS BANK & TRUST
COMPANY; and FIRST NATIONAL BANK OF HOT
SPRINGS *v.* Tom CREVISTON

85-237                                      705 S.W.2d 415

Supreme Court of Arkansas
Opinion delivered March 3, 1986
[Supplemental Opinion on Denial of Rehearing April 15, 1986.]

*Wooten, Glover, Sanders, Slagle, Parkerson & Hargraves,
P.A.*, by: *Richard H. Wooten* and *Robert S. Hargraves*, for
appellant, First National Bank of Hot Springs.

*Wood, Smith & Schnipper*, by: *Ray S. Smith* and *James W.
Chesnutt*; and *Friday, Eldredge & Clark*, by: *Herschel H.
Friday, John C. Echols, John Dewey Watson, Robert K. Walsh*
and *Robert S. Schafer*, for appellant, Arkansas Bank & Trust

Co.

*Carl A. Crow, Jr.*, City Att'y, and *G. Latta Bachelor, III*, Deputy City Att'y, for appellants, City of Hot Springs and Hot Springs Advertising and Tourist Promotion Commission.

*Harkey, Walmsley, Belew & Blankenship*, by: *John Norman Harkey*, for appellee.

*Steve Clark*, Att'y Gen., by: *Curtis L. Nebben*, Deputy Att'y Gen., for intervenor, State of Arkansas.

GEORGE ROSE SMITH, Justice. This is a taxpayer's suit attacking the validity of a $3,000,000 municipal bond issue that was sold primarily to pay existing obligations of Magic Springs Theme Park, a privately owned amusement park in or near the City of Hot Springs. Creviston's complaint for a declaratory judgment and injunctive relief was filed in 1984 against the four appellants: the City of Hot Springs, its Advertising & Tourist Promotion Commission, and two Hot Springs banks. After an extensive trial the chancellor held that the bonds are invalid, for three reasons: The bonds were not issued for the "establishment" of the theme park; they were not issued for a public purpose; and they were not authorized by an election. We need consider only the matter of a public purpose and the need for an election, those issues being decisive.

Magic Springs was created in 1978 as a privately owned amusement park, with the hope that it would be profitable. The promoters contributed some funds to the project, but the bulk of the initial cost was borne by a $4,000,000 Garland County bond issue, secured at least in part by revenues to be derived from the operation of the park.

Apparently the venture lost money from the beginning. By 1982 the county bonds were in default, and there were substantial debts to the banks for money lent. At that time Paul Burge, an officer of First National Bank, was made president of the park company to try to work out its financial problems. The chosen solution was for the creditors to persuade the City to issue the $3,000,000 of bonds now in question. The bonds are secured by a pledge of the gross receipts tax levied by the City upon hotels and restaurants in the City. See Ark. Stat. Ann. §§ 19-4613 *et seq.* (Repl. 1980 and Supp. 1985). In the bond indenture the City

agrees not to repeal that tax until the bonds have been paid. (The General Assembly, in Act 976 of 1985, declared "that the hotel and restaurant tax is not a 'tax' as 'taxes' are ordinarily understood," but in the statutes authorizing the levy the legislature correctly called it a gross receipts tax. Its character cannot be changed by a legislative declaration.)

Arkansas Bank & Trust bought $2,000,000 of the bonds; First National bought the other $1,000,000. Those proceeds were immediately disbursed, with a total of $2,577,875.09 going back to the banks. After all other disbursements the sum of $260,282.46 was left for the park company to use in its effort to escape from its financial plight. That effort evidently failed, for at the trial there was a reference to the park's being offered for sale to the highest bidder.

■ The issue of public purpose may be disposed of quickly. Had the bonds been issued at the outset to create Magic Springs as a tourist attraction, the appellants would be in a better position to argue public purpose than they now are, in view of what has happened. By 1982 it was known that Magic Springs had consistently lost money during its brief life. The county bond money had been spent, and the bonds were in default. Obligations to the banks were delinquent. Most of the proceeds from the sale of the city bonds were used to pay loans held by the banks and to pay the original promoters on some theory not made entirely clear. The chancellor was right in finding that the City's attempt to use tax money to bail out the creditors of a privately owned venture was not designed to accomplish a purpose primarily public in nature.

Whether an election was required for the issuance of the bonds is not an equally simple question. We reject at once the bank's argument that the case should be governed by *Purvis I, Purvis* v. *Hubbell*, 273 Ark. 330, 620 S.W.2d 282 (1981). In that case we closed our opinion by giving unmistakable notice that our interpretation of the Constitution with regard to the necessity for popular approval of bonds would be reconsidered at the next opportunity. That case was decided on July 13, 1981. The bonds now in question were not issued until about a year later; so no one could assume that the position taken by the court in *Purvis I* would be adhered to.

Ever since the adoption of our Constitution in 1874, it has positively prohibited the issuance of bonds by a city or county without an election. In its original form, Section 1 of Article 16 stated that no county or city should lend its credit, "nor shall any county, city, town or municipality ever issue any interest-bearing evidences of indebtedness," except to pay debts then existing. Exceptions to the broad prohibition were created by Amendments 13, 17, 25, and 49, to permit the issuance of bonds for various purposes, but every one of the Amendments retained the requirement that the bond issue first be approved at an election. All four of those Amendments have now been incorporated in Amendment 62, adopted in 1984, but it too requires the consent of a majority of the electors.

Despite the constitutional ban against the issuance of municipal bonds without popular approval, this court created an exception more than 50 years ago. *Snodgrass* v. *City of Pocahontas*, 189 Ark. 819, 75 S.W.2d 223 (1934). There the city, pursuant to a 1933 statute, adopted an ordinance authorizing the issuance of bonds without an election, to finance improvements to the municipally owned water works. This court approved the proposal, giving its reasons in two sentences that have been often quoted to justify the creation of additional exceptions to the constitutional prohibition:

> It was manifestly the intention of the framers of Amendment 13 to prohibit cities and towns from issuing interest-bearing evidence of indebtedness, to pay which the people would be taxed, or their property appropriated to pay the indebtedness, or any indebtedness that placed any burden on the taxpayers. It was not the intention to prohibit cities and towns from making improvements and pledging the revenue from the improvements so made alone to the payment of the indebtedness.

The *Snodgrass* opinion did not explain why it was manifest that the framers of Amendment 13 did not really mean what they said. In truth, the framers had anticipated the very problem that confronted the City of Pocahontas by providing in the Amendment that although only a five-mill tax could be levied for the twenty-odd improvements listed in the Amendment, an additional five mills was authorized to secure bonds issued for the

acquisition or improvement of light plants or water works. Thus the framers did intend for the people to be taxed to pay for the very type of improvement that Pocahontas contemplated.

The successive cases by which the breach in the constitutional prohibition has been gradually widened were reviewed in three of the opinions in *Purvis II* and need not be reexamined. *Purvis* v. *City of Little Rock*, 282 Ark. 102, 667 S.W.2d 936, 669 S.W.2d 900 (1984). That case might have been "the next opportunity" anticipated in *Purvis I*, but the great diversity of individual views in *Purvis II*, producing six separate opinions, resulted in there being no majority opinion.

■ The banks' reliance on *Purvis I* puts the issue squarely before us again. We believe that the only proper and permanent course is for us simply to give effect to the plain language of the Constitution. It states that no city or county shall ever issue interest-bearing evidences of indebtedness without the consent of the electors. That mandate is binding. It includes, of course, transparent evasions by which a token commission or other body is created to sign the bonds while disclaiming any responsibility on the part of its creator. There having been no election in the case at bar, the bonds are invalid for that reason also. (We recognize that if any bonds have been issued in reliance on Point 1 of our supplemental opinion on rehearing in *Purvis II*, those bonds would not be affected by today's decision.)

■■ The City also appeals from the trial court's allowance of a $30,000 fee to the appellee's attorney, to be paid by the City. It has consistently been the rule in Arkansas that attorney's fees are not chargeable as costs in litigation unless specifically permitted by statute. The legislature authorized the payment of such fees in cases in which the court orders a county or city to refund money to the taxpayers. Ark. Stat. Ann. § 84-4601 (Repl. 1980). Here, however, no such refund was ordered. In that situation the statute does not apply. *Munson* v. *Abbott*, 269 Ark. 441, 602 S.W.2d 649 (1980).

■ It is also argued that, on the authority of *Crittenden County* v. *Williford*, 283 Ark. 289, 675 S.W.2d 631, 679 S.W.2d 795 (1984), and *Black* v. *Thompson*, 237 Ark. 304, 372 S.W.2d 593 (1963), the fee should be allowed on a theory of unjust enrichment, in that the City would have continued to waste the

taxpayers' money if this suit had not been brought. Neither case supports the argument. In *Williford* the fee was allowed because the taxpayer's suit had created a common fund in court, for the benefit of the taxpayers. Here there has been no similar recovery. In *Black* the fee was allowed in an administration proceeding on the authority of a provision in the Probate Code, Ark. Stat. Ann. § 62-2208 (Repl. 1971), with unjust enrichment being discussed as a second basis for the allowance. There, however, the heirs had directly benefited from the attorney's services in defending a fraudulent claim. The situations are not comparable. The allowance of the attorney's fee in the present case must be set aside.

As so modified the decree is affirmed.

PURTLE, J., not participating.

DUDLEY, J., concurs. HAYS, J., concurs and dissents.

ROBERT H. DUDLEY, Justice, concurring. I concur in holding that the City's attempt to use tax money to bail out the creditors of a privately owned venture was not a use of tax money for a public purpose. For that reason the bond issue is invalid.

Unfortunately, the majority opinion goes much farther and overrules *Snodgrass* v. *Pocahontas*, 189 Ark. 819, 75 S.W.2d 223 (1934), and its progeny. Since *Snodgrass, supra*, this court has consistently held that the Constitution of Arkansas authorizes cities to incur long term debt for the purpose of making authorized improvements for public purposes, without conducting an election, if the debt is to be repaid solely out of revenues generated by those improvements, and the repayment does not place a burden on the taxpayer for which his property might be appropriated. For 52 years this court has not deviated from that holding. Two constitutional amendments, Numbers 49 and 62, and various statutes, have been enacted in reliance on that holding. I would not overrule *Snodgrass, supra*.

STEELE HAYS, Justice, concurring and dissenting. I concur in the result because the chancellor found the retirement of these bonds included the pledging of hotel and restaurant taxes, thereby bringing the case within the caveat announced in *Purvis* v. *Hubbell, Mayor*, 273 Ark. 330, 620 S.W.2d 282 (1981) and, hence, requiring an election. Beyond that, I respectfully disagree with the majority.

By this decision the court is overruling a line of cases which began with *McCutchen* v. *Siloam Springs*, 185 Ark. 846, 49 S.W. 1037 (1932), and was quickly followed by *Jernigan* v. *Harris*, 187 Ark. 705, 187 S.W. 705 (1932) and *Snodgrass* v. *Pocahontas*, 189 Ark. 819, 75 S.W.2d 223 (1934). The rule, as stated in *Snodgrass*, is that revenue bonds for a public purpose may be issued without an election so long as the bonds are not an obligation of the taxpayers but are paid *solely* from funds generated by the facility built or acquired with the proceeds of the bonds.

That principle has been followed unerringly by this court for over fifty years and has been approved by scores of individual members of this court. Without saying so, the court has today overruled *Snodgrass* v. *Pocahontas* and swept away a host of cases dealing generally or specifically with the principle: *Purvis* v. *City of Little Rock*, 282 Ark. 102, 667 S.W.2d 936, 669 S.W.2d 900 (1984); *Murphy* v. *Epes*, 283 Ark. 517, 678 S.W.2d 352 (1984); *Purvis* v. *Hubbell, Mayor*, 273 Ark. 330, 620 S.W.2d 282 (1981); *Holmes* v. *Cheney*, 234 Ark. 503, 352 S.W.2d 943 (1962); *Miles* v. *Gordon*, 234 Ark. 525, 353 S.W.2d 157 (1962); *McArthur* v. *Smallwood*, 225 Ark. 328, 281 S.W.2d 428 (1955); *Williams* v. *Harris*, 215 Ark. 928, 224 S.W.2d 9 (1949); *Jacobs* v. *Sharp*, 211 Ark. 865, 202 S.W.2d 964 (1947); *City of Harrison* v. *Braswell*, 209 Ark. 1094, 194 S.W.2d 12 (1946); *Robinson* v. *DeValls Bluff*, 197 Ark. 391, 122 S.W.2d 552 (1938); *Jernigan* v. *Harris*, 187 Ark. 705, 62 S.W.2d 5 (1933); *McCutchen* v. *Siloam Springs*, 185 Ark. 846, 49 S.W.2d 1037 (1932).

I concede that no court should be powerless to correct bad law, but I contend *Snodgrass* v. *Pocahontas* is sound law and should not be overturned. It has stood the test of half a century and the scrutiny of numerous judges. It has been frequently reaffirmed and ought not to be so easily rejected, at least not without more persuasive reasons than are provided by the majority.

In *Wayland* v. *Snapp*, 232 Ark. 57, 334 S.W.2d 633, decided in 1960, the court quoted with approval language from the *Snodgrass* opinion which the court now holds to be erroneous:

> It was manifestly the intention of the framers of Amendment 13 to prohibit cities and towns from issuing interest-

bearing evidence of indebtedness, to pay which the people would be taxed, or their property appropriated to pay the indebtedness, or any indebtedness that placed any burden on the taxpayers. It was not the intention to prohibit cities and towns from making improvements and pledging the revenue from the improvements so made alone to the payment of the indebtedness.

Less than two years ago in *Purvis* v. *Little Rock*, (*Purvis II*) 282 Ark. 102, 667 S.W.2d 936 (1984), this language was quoted with approval:

This court has approved a line of cases going back at least to the 1932 case of *McCutchen* v. *Siloam Springs, supra*, which hold that municipalities may issue pure revenue bonds for purely essential public purposes without holding an election.

Moreover, in a supplemental opinion to *Purvis II*, five of the seven members of this court pointedly emphasized that the *Snodgrass* v. *Pocahontas* holding *was not impaired* by the *Purvis II* decision. A few months later in *Murphy* v. *Epes*, 283 Ark. 517, 678 S.W.2d 352 (1984), a majority of this court again embraced the principle now being renounced. Justice Dudley's concurring opinion from *Purvis II* was quoted approvingly by the majority in *Murphy* v. *Epes*:

Our cases constitute a well developed body of precedent, now stretching over half a century, by which this court has *consistently interpreted* the constitution to authorize governments to incur long term debts, without elective approval, in order to make authorized improvement for public purposes when the debt is to be paid out of revenues. (At p. 522).

Today's opinion has this to commend it—it provides a solution for the confusion which followed the *Purvis I* caveat. But that alone does not justify the extreme step taken today when a viable alternative is open, one which, I believe, is consistent with precedent. That is to adhere to the long standing principle of *Snodgrass* v. *Pocahontas*, applying at the same time the caveat of *Purvis I* by requiring an election as to those projects which entail the use of revenues from sources outside the improvement itself to

293-A

retire the bonds. That, I submit, is what the *Purvis* caveat was meant to say. True, these taxes are a subordinate, rather than a primary, guaranty, but if the revenues from the Magic Springs project prove inadequate to meet the indebtedness (which appears to be the case), these tax revenues are irrevocably committed. In that respect they pose a liability that the taxpayer alone can authorize under our constitution.

With respect to the public purpose issue, I respectfully disagree that the Magic Springs Theme Park is so lacking in a public purpose that the judicial branch should override a legislative decision to the contrary. Those views are discussed in a dissenting opinion in *Ft. Smith* v. *O'Loughlin*, decided today, and in general are applicable here.

Supplemental Opinion on Denial of Rehearing
delivered April 15, 1986

713 S.W.2d 230

GEORGE ROSE SMITH, Justice, on rehearing. The petition for rehearing must be denied, but certain questions raised in it and in several supporting petitions require comments about a few points that are closely related to the issues actually before us when this case was first decided.

Fears are expressed that the court's opinion creates doubts about the validity of revenue bonds that were issued, without an election, before the date of the court's opinion, March 3, 1986. Not one of us had or has the remotest intention of invalidating bonds that were issued in reliance on the court's earlier decisions. Nor was it the court's intention to hold that the Constitution does not permit the use of revenue bonds by counties and cities. Like other interest-bearing securities, however, revenue bonds must be approved by the electorate.

In general, our opinion is prospective, but there is an exception as to the bonds involved in this case — the Magic Springs bonds issued by the Hot Springs Advertising & Tourist Promotion Commission. Under our prior decisions an exception is made with respect to the particular case in which earlier cases are overruled. That is necessarily true, for otherwise there would be no reason for a litigant to devote the required time, effort, and

money to an attack upon existing unsound precedents. *Parish* v. *Pitts*, 244 Ark. 1239, 429 S.W.2d 45 (1968).

The cities of Plainview and Eureka Springs request directives about their special problem. They say they have gone so far toward entering into contracts and committing funds for capital-improvement bond issues that they should be allowed to proceed, else they will suffer penalties. The Plainview petition is contested by citizens who say related litigation is in progress. Serious questions of fact may exist or may arise. In a rare situation it is possible that the rights of the public may have vested to such an extent that the bond issue could be approved by a declaratory judgment. Such cases, however, cannot be passed upon in the first instance at the appellate level.

A petition filed by the Little Rock Municipal Water Works argues that our original opinion had no constitutional basis, because Section 1 of Article 16 of the Constitution, which provides that no county or municipality shall ever issue interest-bearing evidences of indebtedness, was repealed by Amendment 62. The theory is that Amendment 13 amended Section 1 "to read as follows," and therefore when Amendment 62 repealed Amendment 13, the result was to strike out Section 1 as well.

This argument has no substance. Amendment 13 recopied Section 1, which was only a single paragraph, and then added an 11-paragraph proviso detailing how cities, but not counties, could issue tax-supported bonds for some 20 different capital improvements. Thus Section 1 continued in full force, with a proviso. When Amendment 62 repealed Amendment 13, obviously the intent was to repeal only what had been added by the Amendment, not the original Section. In fact, Amendment 62 contains substitute provisions by which the power of cities to issue tax-supported bonds for the making of capital improvements is preserved. If the authors of Amendment 62 meant to repeal Section 1 of Article 16, they should and would have said so. In no other way could the voters have been put on notice that by adopting Amendment 62 they were destroying a safeguard that had existed for more than a century.

Finally, a number of the petitioners ask us to suspend the operation of the Constitution to allow for the passage of enabling legislation and the possible adoption of a constitutional amendment. Ever since *Marbury* v. *Madison*, 1 Cranch 137, was

decided in 1803, the Supreme Court has had the responsibility of interpreting the United States Constitution and the state courts that of interpreting the state constitutions. But the judicial authority does not extend beyond interpretation. The courts do not have the power to hold a constitutional mandate in abeyance; they should not have that power. The constitutional way of doing things may be slow at times, but it is the right way. If a county or city urgently needs a capital improvement, additional legislation is not required; for Amendment 62 is self-executing and provides in Section 6 that in the absence of laws implementing the Amendment, elections may be called and conducted under the laws governing elections generally. As for revenue bonds, nothing stands in the path of their availability except the need for an election. The framers of the Constitution and of the pertinent amendments did not share the apparent reluctance of the amici curiae to resort to popular elections.

The petition for rehearing is denied.

HOLT, C.J., concurs.

DUDLEY and HAYS, JJ., concurring.

PURTLE, J., not participating.

JACK HOLT, JR., Justice, concurring. I join with the court's supplemental opinion, issued upon the denial of the Petition for Rehearing. However, I consider it appropriate to note that certain petitioners in amicus curiae briefs ask us to rule on several collateral matters, primarily concerning Arkansas revenue bonds issued in accordance with amendment 20 to the Constitution of the State of Arkansas, and the constitutional aspects of bond refunding by a municipality without prior voter approval.

These issues are properly not resolved by the majority opinion, however, I think an explanation for the failure to address them is warranted. We do not discuss these subjects simply because they do not fall within the framework of the case before us, which questions the authority of a city or municipality within this state to issue municipal bonds without an election in light of the constitutional restraints of amendment 13 to the Arkansas Constitution.

We are now being asked to decide questions on issues which were not before the trial court. Since we do not issue advisory

opinions, we must decline to do so here. *McDonald* v. *Bowen*, 250 Ark. 1049, 468 S.W.2d 765 (1971); *Hogan* v. *Bright*, 214 Ark. 691, 218 S.W.2d 80 (1949). Because the request for our opinion on the legality of state bonds issued under amendment 20 and bond refunding, is merely seeking advice, our opinion would not have the force, effect, and binding nature of a judicial decision which resolves the actual specific controversy between the parties.

We are not unmindful of the desire, or perhaps need, for an answer to these issues, however, to address them in a case such as this would be without precedent and against our long-standing rule that the Supreme Court does not issue advisory opinions. *McCuen, et al.* v. *Harris, Tax Collector*, 271 Ark. 863, 611 S.W.2d 503 (1981).

We need only say further that we have fully answered and clarified the issues which were properly before us.