The Honorable David Rainey State Representative Post Office Box 642 Dumas, AR 71639
Dear Representative Rainey:
I am writing in response to your request for an opinion on three questions concerning the financing of the construction of a new city-owned hospital in Dumas. You have forwarded the following information and pose three questions, below:
 In 2003, the voters of the City of Dumas approved the issuance of sales and use tax bonds to finance the construction of a new city-owned hospital. The original plan was that the new hospital building would be leased to Delta Memorial Hospital and that Delta Memorial Hospital would provide all necessary equipment to operate the hospital.
 The construction bids were approximately 1.6 million over the available bond money, and Delta Memorial Hospital agreed to cover the excess construction costs even though the building was to be owned by the City.
 Delta Memorial Hospital has run into problems in obtaining the necessary financing for both the 1.6 million in excess construction costs and the 1.6 million in equipment needs.
 As a result, the City of Dumas and Delta Memorial Hospital have raised the following questions upon which I am requesting your opinion:
 1. Whether it would be legally permissible for the City of Dumas to grant a mortgage on the new city-owned hospital in order to secure a loan to Delta Memorial Hospital, the purpose of which would be to refinance an existing construction loan, which was used by Delta Memorial Hospital to pay the 1.6 million in excess construction costs. I note that the loan funds were used to construct the new hospital, which is owned by the City, even though the borrower on the loan is Delta Memorial Hospital;
 2. Whether it would be legally permissible for the City of Dumas to grant a mortgage on the new city-owned hospital in order to secure a loan to Delta Memorial Hospital, the purpose of which would be to refinance an existing loan, which has been used or will be used by Delta Memorial Hospital to purchase equipment to operate the new hospital. I note that the equipment will be owned by Delta Memorial Hospital, a non-profit corporation whose primary mission is to provide health care to the citizens of Dumas; and
 3. Whether it would be legally permissible for the City of Dumas to issue revenue bonds to refinance or re-fund a construction loan to Delta Memorial Hospital, and, if so, whether it would be legally permissible for the City of Dumas to grant a mortgage on the new hospital building to secure the bonds. Once again, I note that the loan funds were used by Delta Memorial Hospital to finish the new hospital, which is owned by the City, even though the borrower on the loan is Delta Memorial Hospital.
RESPONSE
It is my opinion that the answer to your first and second questions is "no." It is difficult to address your third question without more information as to how the revenue bonds would be structured. The issuance of such bonds under the facts you describe, however, might be assailed as not being for a "public purpose" under Arkansas Constitution, Amendment 65.
Question 1 — Whether it would be legally permissible for theCity of Dumas to grant a mortgage on the new city-owned hospitalin order to secure a loan to Delta Memorial Hospital, the purposeof which would be to refinance an existing construction loan,which was used by Delta Memorial Hospital to pay the 1.6 millionin excess construction costs. I note that the loan funds wereused to construct the new hospital, which is owned by the City,even though the borrower on the loan is Delta Memorial Hospital.
It is my opinion that the answer to this question is "no."
This conclusion is compelled by Arkansas Constitution, art. 12, §5, and art. 16, § 1, which provide, respectively, as follows:
Article 12, § 5
 No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.
 Article 16, § 1
 Neither the State nor any city, county, town or other municipality in this State shall ever lend its credit for any purpose whatever; nor shall any county, city or town or municipality ever issue any interest bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the Constitution of 1874, and the State shall never issue any interest-bearing treasury warrants or scrip.
In my opinion, the most relevant portion of these proscriptions for our purposes is the portion prohibiting the "lending of credit." In Op. Att'y Gen 1995-228, it was concluded that the City of Corning could not constitutionally mortgage an industrial building to secure debt to be incurred by a nonprofit corporation. My predecessor relied upon Arkansas Constitution, art. 16, § 1 and the case of Barnhart v. City of Fayetteville,321 Ark. 197, 900 S.W.2d 539 (1995). My predecessor described the facts of Barnhart as follows:
 There, a city entered into an agreement to collect and pay over sanitation fees sufficient in amount to pay all amounts coming due on bonds issued by a sanitation authority formed by the city, another city, and a county. The trial court found that the agreement was an unconditional guaranty of the authority's debt, and that the City would become obligated to pay under the guaranty upon the default of another governmental body (the county or the other city), regardless of whether the City received any services from the authority. There was no appeal from that finding, and the Supreme Court held that such an obligation was in violation of Ark. Const. art. 16, § 1, as the lending of credit.
Op. 1995-228 at 2.
My predecessor then addressed the issue of the City of Corning granting a mortgage on city property to secure a private nonprofit corporation's debt, by stating:
 In my view, the courts likely would characterize the City's mortgage as a limited guaranty of the non-profit corporation's debt. . . . In addition, the entity whose debt would be secured by the mortgage is private, rather than a public body as was the case in Barnhart. A court presumably would be even more likely to find an impermissible lending of credit where the beneficiary is a private entity.
Id. at 2-3.
In my opinion this conclusion applies notwithstanding the fact that the private nonprofit corporation in this instance, Delta Memorial Hospital, has provided funds to complete construction of a public hospital. You have not indicated whether this action was gratuitous, or whether the excess construction funds were provided in consideration of some agreement with the City. In any event, the constitutional proscription nonetheless prohibits a city from guaranteeing the debt of a nonprofit corporation in this fashion. In my opinion this action would amount to an impermissible "lending of the credit" of the City under Arkansas Constitution, art. 16, § 1 and art. 12, § 5. There may be other available avenues to rectify the current financial situation of the hospital. City officials may wish to consult with the city attorney and perhaps bond counsel to explore any available avenues of relief. I can only state, in response to your first question, that the Arkansas Constitution does not allow a mortgage of city property to secure the indebtedness of a nonprofit corporation under the facts you have described.
Question 2 — Whether it would be legally permissible for theCity of Dumas to grant a mortgage on the new city-owned hospitalin order to secure a loan to Delta Memorial Hospital, the purposeof which would be to refinance an existing loan, which has beenused or will be used by Delta Memorial Hospital to purchaseequipment to operate the new hospital. I note that the equipmentwill be owned by Delta Memorial Hospital, a non-profitcorporation whose primary mission is to provide health care tothe citizens of Dumas.
In my opinion the answer to this question is also "no." for the same reasons addressed in response to your first question above.
Question 3 — Whether it would be legally permissible for theCity of Dumas to issue revenue bonds to refinance or re-fund aconstruction loan to Delta Memorial Hospital, and, if so, whetherit would be legally permissible for the City of Dumas to grant amortgage on the new hospital building to secure the bonds. Onceagain, I note that the loan funds were used by Delta MemorialHospital to finish the new hospital, which is owned by the City,even though the borrower on the loan is Delta Memorial Hospital.
It is difficult to address this question without more facts as to how the revenue bonds would be structured or used to refund or refinance the existing private obligation. You have not indicated, for example, whether the bond proceeds would be used to completely refund or pay off the existing private construction loan or whether the bond proceeds would simply be used as some type of security for a private refinancing. You have not indicated any possible stream of income which would be used to pay off the bonds once issued. I cannot come to any definitive conclusions regarding this question in the absence of such facts.
In my opinion however, the answer to this question, as phrased, may be "no," for an overarching reason related to the issuance of revenue bonds. In my opinion the purpose for which the revenue bonds would be issued under the facts you describe would arguably not be a "public purpose" under Amendment 65 to the Arkansas Constitution.
Your third question inquires about the issuance of bonds. Amendment 65 to the Arkansas Constitution governs the issuance of revenue bonds and provides in pertinent part as follows:
 Subject to the provisions of Section 2 hereof, any governmental unit, pursuant to laws heretofore or hereafter adopted by the General Assembly, may issue revenue bonds for the purpose of financing all or a portion of the costs of capital improvements of a public nature, facilities for the securing and developing of industry or agriculture, and for such other public purposes as may be authorized by the General Assembly.
(Emphasis added).
This amendment authorizes the issuance of revenue bonds for "capital improvements of a public nature," "facilities for the securing and developing of industry," and for "such other public purposes as may be authorized by the General Assembly." It does not appear that the purposes you describe (to "refinance or re-fund a construction loan to Delta Memorial Hospital"), would fall within these authorized purposes. You have not cited any statute evidencing the General Assembly's authorization to issue bonds for such purposes and existing case law of the Arkansas Supreme Court indicates that the issuance of bonds to aid in the financial position of private entities or their creditors may not under the facts you describe serve a "public purpose." This was one portion of the holding in City of Hot Springs v. Creviston,288 Ark. 286, 289, 705 S.W.2d 415 (1986). At issue in Creviston
was the "Magic Springs" theme park in Hot Springs. After an original Garland County bond issue of $4,000,000 had been exhausted, City of Hot Springs bonds were issued to bail out the financially troubled theme park and its creditors. With regard to the issue of a public purpose, the court stated:
 The issue of public purpose may be disposed of quickly. Had the bonds been issued at the outset to create Magic Springs as a tourist attraction, the appellants would be in a better position to argue public purpose than they now are, in view of what has happened. By 1982 it was known that Magic Springs had consistently lost money during its brief life. The county bond money had been spent, and the bonds were in default. Obligations to the banks were delinquent. Most of the proceeds from the sale of the city bonds were used to pay loans held by the banks and to pay the original promoters on some theory not made entirely clear. The chancellor was right in finding that the City's attempt to use tax money to bail out the creditors of a privately owned venture was not designed to accomplish a purpose primarily public in nature.
Id. at 288.
Although under the facts you describe, the venture or improvement ultimately at issue is not privately owned, but is rather, a county-owned hospital, in my opinion the holding in Creviston
nonetheless indicates that a revenue bond issue to refinance or re-fund the debt of a private entity incurred in the previous construction of a capital improvement does not serve a public purpose and would therefore not be allowable under Amendment 65 or existing statutes.[1] The fact that Delta Memorial Hospital apparently agreed to cover excess construction costs on the project does not, without more, transform its debts into public obligations. Again, you have not provided enough information with regard to your third question to analyze the question fully. I can only state, in response to your third question, that a substantial doubt exists as to whether revenue bonds could be issued for the stated purpose of refinancing or refunding the debt of a private entity or its creditors for the previous construction of a county owned hospital under the facts you describe. Consultation with the city attorney or bond counsel is indicated in this regard.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
 MIKE BEEBE Attorney General
[1] Although the Creviston decision was issued prior to Amendment 65 (and in fact prompted that Amendment, which, in most cases, obviates the necessity for an election prior to the issuance of revenue bonds), the portion of the Creviston
decision regarding the necessity of a "public purpose" is nonetheless precedential under the facts you describe and in light of the retention of a "public purpose" requirement in Amendment 65.