The Honorable John Threet Prosecuting Attorney Fourth Judicial District Washington County Courthouse 280 North College, Suite 301 Fayetteville, Arkansas 72701
Dear Mr. Threet:
I am writing in response to your request for an opinion on four questions regarding Act 1980 of 2005, which amended several provisions of the "Local Government Capital Improvement Revenue Bond Act of 1985," codified at A.C.A. § 14-164-401 to-419 (Repl. 1998) and (Supp. 2007). Specifically, the Act included "performance-based efficiency projects" to the list of projects for which counties and cities may issue revenue bonds under the provisions of that subchapter. You pose four questions concerning the Act, as follows:
 1. If the funds used to pay energy bills is tax money, and therefore, tax money is used to pay the revenue bonds, is this Act constitutional?
 2. If so, are there any other legal infirmities with this Act?
 3. Would having an election to issue these bonds cure any constitutional or other legal infirmities?
 4. Could Amendment 78 financing be used instead of the financing contemplated by this Act? *Page 2 
RESPONSE
In my opinion, in response to your first question, to the extent the Act can be construed as authorizing revenue bonds to be repaid with tax dollars (which seems to be the basis of your first question), the Act is constitutionally suspect. An answer to your second question is therefore unnecessary. In response to your third question, counties and cities wishing to issue bonds must do so with constitutional authority.Act 1980 of 2005 and the subchapter that it amends authorize the issuance of "revenue bonds" without an election, presumably pursuant to the provisions of Arkansas Constitution, Amendment 65. If a city or county wishes to issue bonds with an election, it must follow some other applicable constitutional procedure. It may be possible to issue tax-backed bonds for the described purposes using a different statutory subchapter that provides for an election on the question. Consultation with the city or county's normal legal counsel or bond counsel is advisable on this issue. In my opinion the answer to your fourth question regarding Amendment 78 is "yes," assuming all the restrictions and requirements of Amendment 78 are observed. Again, local counsel or bond counsel should be consulted.
Question 1 — If the funds used to pay energy bills is tax money, andtherefore, tax money is used to pay the revenue bonds, is this Actconstitutional?
In my opinion, to the extent the act can be construed as authorizing revenue bonds to be repaid with tax dollars, the Act is constitutionally suspect.
As an initial matter, the Arkansas Constitution provides at article 16, § 1 as follows:
 Neither the State nor any city, county, town or other municipality in this State shall ever lend its credit for any purpose whatever; nor shall any county, city or town or municipality ever issue any interest bearing evidences of indebtedness, except such bonds as may be authorized by law to provide for and secure the payment of the indebtedness existing at the time of the adoption of the *Page 3 
Constitution of 1874, and the State shall never issue any interest-bearing treasury warrants or scrip.
(Emphasis added).[1]
This provision, which was adopted as a part of the original Arkansas Constitution of 1874, has been interpreted to mean that a county or municipal corporation cannot make a legal and binding contract by which it agrees to pay interest on its indebtedness. Bourland v. FirstNational Bank Building Company, 152 Ark. 139, 237 S.W.2d 681 (1922).
As noted in Op. Att'y Gen. 2003-152, however:
 These provisions are qualified by several constitutional amendments. Amendment 62 authorizes the legislative body of any municipality, `with the consent of a majority of the qualified electors voting on the question at an election called for that purpose,' to authorize the issuance of interest-bearing bonds to finance municipal improvements. Amendment 65 further provides for the issuance without voter approval of revenue bonds to be retired using various non-tax sources of revenue.
Id. at 4.
Amendment 62 thus generally authorizes cities and counties to issue tax-backed bonds after a vote of the people. Amendment 65 authorizes the issuance of "revenue bonds" without an election of local voters, as long as they are backed or secured by revenues other than taxes. Specifically "revenue bonds" are defined in Amendment 65 as:
 . . .all bonds, notes, certificates or other instruments or evidences of indebtedness the repayment of which is secured by rents, user fees, charges, or other revenues (other than assessments for local *Page 4 improvements and taxes) derived from the project or improvements financed in whole or in part by such bonds, notes, certificates or other instruments or evidences of indebtedness, from the operations of any governmental unit, or from any other special fund or source other than assessments for local improvements and taxes.
(Emphasis added).
Finally, Amendment 78 to the Arkansas Constitution, which you reference in your fourth question, authorizes cities and counties to enter into short-term financing obligations maturing over a period of, or having a term not to exceed five (5) years, for the purpose of acquiring, constructing, installing or renting certain real or tangible personal property.
With this constitutional backdrop in mind, your first question inquires about the constitutionality of Act 1980 of 2005, which amended A.C.A. § 14-164-40 — 1 419 (Repl. 1998) and (Supp. 2007), which is the "Local Government Capital Improvement Revenue Bond Act of 1985." That subchapter authorizes cities and counties to issue "revenue bonds" under Amendment 65 for certain capital improvements. See A.C.A. §14-164-402(1) (Supp. 2007).[2] Act 1980 amended the subchapter to add provisions to authorize cities and counties to issue bonds for "performance-based efficiency projects," which are defined as:
 . . .undertaking[s] throughout which a qualified efficiency engineering company oversees the procurement of materials and services for a capital improvement or a project and the acquisition, development, design, installation, construction, *Page 5 
maintenance, monitoring, and operation of a capital improvement or a project, causing an issuer to generate efficiency savings. . . .[3]
A.C.A. § 14-164-402(12) (Supp. 2007). Such contracts typically involve the installation of energy equipment, which can range from lighting fixtures and bulbs to computerized, energy efficient heating and cooling systems. See, e.g., Op. Att'y Gen. 94-101 (discussing a proposed contract for such equipment by an institution of higher education).
In this regard, Act 1980 provides for a "qualified efficiency contract," between a city or county and a "qualified efficiency engineering company." Under such a contract, the company guarantees to the issuing city or county the annual amount of the efficiency savings to be derived from the project, which must be in an amount sufficient to pay the principal and interest due on the bonds. A.C.A. §14-164-402(15)(A), (B) and (C) (Supp. 2007). The guarantee is accomplished by the company providing either: 1) a letter of credit; 2) an amount of cash placed in escrow; 3) a multi-year surety bond; 4) a corporate guarantee if the company has an investment-grade credit rating; or 5) any combination of the above actions. A.C.A. §14-164-402(15)(D) (Supp. 2007). If the actual energy savings are less than projected, the company shall pay to the issuer the difference between the projected energy savings and the actual energy savings. A.C.A. § 14-164-402(E); (F); and (G).
Although it is not made entirely clear by the Act, the revenue bonds are presumably authorized to be repaid under the Act from the "savings" realized as a result of the performance-based efficiency project. The Act never expressly states *Page 6 
that the "efficiency savings" may be used to repay the bonds. That appears to be the clear implication, however, in light of the Act's focus on defining "efficiency savings" and in requiring the contractor to guarantee that the annual amount of the savings will be "in an amount at least equal to the aggregate principal and interest due. . .on any bonds. . . ." A.C.A. § 14-164-402(15)(C). Of course, no actual new revenues are produced as a result of such projects. If all goes as expected, savings to city or county coffers are instead produced, in the form of reduced energy bills. The actual revenues used to pay the principal and interest on the bonds may therefore be the same source of revenues that the city or county formerly used to pay its higher energy bills. This source of revenues may include tax dollars. Your first question thus inquires as to the constitutionality of this action. You ask "If the funds used to pay energy bills is tax money, and therefore, tax money is used to pay the revenue bonds, is this Act constitutional?"
In my opinion to the extent the Act authorizes the bonds to be repaid from tax dollars, the act is constitutionally suspect under Article 16, § 1 and Amendment 65. Article 16 § 1 prohibits cities and counties from issuing any interest-bearing evidences of indebtedness. Amendment 65 makes an exception to that prohibition, authorizing the issue of "revenue bonds." Again, however, Amendment 65 defines "revenue bonds" as "all bonds, notes, certificates or other instruments or evidences of indebtedness the repayment of which is secured by rents, user fees, charges, or other revenues (other than assessments for localimprovements and taxes) derived from the project or improvements financed in whole or in part by such bonds. . .from the operations of any governmental unit, or from any other special fund or source other than assessments for local improvements and taxes."
As noted previously, the "performance-based efficiency projects" authorized by Act 1980 are not revenue-producing. Their aim is to create savings to the issuing city or county. Although it may be concluded that the savings realized from such a project are "derived" from the project for purposes of the definition above, the actual revenues that are ultimately forwarded to pay the principal and interest on the bonds may, as your first question suggests, be derived not from the project, but from taxpayers. The word "derive" means "to receive or obtain from a source or origin." RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2nd Ed., 2001) at 536. In my opinion, Amendment 65 is violated if, as your first question seems to suggest, the city or county merely uses the tax dollars that it would have otherwise used to pay its higher energy bills to pay the principal and interest on bonds issued under A.C.A. § 14-164-401 to-419. *Page 7 
In addition, under the applicable statutory subchapter, "[t]he principal of and interest on the revenue bonds. . .shall be secured by a pledge of, and shall be payable from, revenues, as defined in §14-164-402." A.C.A. § 14-164-411(a) (Repl. 1991). Act 1980 of 2005 did not materially change the definition of "revenues" under that statute, which are still defined as follows:
 "Revenues" means project revenues[4] or any other special fund or source other than taxes or assessments for local improvements including, without limitation, any acquired with bond proceeds and the revenues to be derived from them, and any other user fees, charges or revenues derived from the operations of any municipality or county and any agency, board, commission, or instrumentality.
This definition authorizes the use of "project revenues" or other special funds, but expressly prohibits the use of tax dollars to repay the bonds. Again, although "savings" may arise from such projects, "revenues" are not "derived" therefrom. To the extent that the bonds are actually repaid with revenues originating as tax dollars, in my opinion the source of the funds must be recognized as "taxes" for purposes of the definition above and Amendment 65.
Of course, if the revenues actually used to pay the bonds are not tax dollars or assessments for local improvements, Amendment 65 stands as no obstacle to their use to support such bonds. See, e.g., Harris v. Cityof Little Rock, 344 Ark. 95, 40 S.W.3d 214 (2001) ("It is clear from the plain language of Amendment 65 and the foregoing statutes that revenue bonds may be repaid with rents, user fees, charges, or other revenues, other than tax revenues, derived from three sources: (1) the project or improvement financed by the bonds; (2) the operations of any governmental unit; or (3) any other special fund or source other than assessments for local improvement and taxes.")
In my opinion, therefore, in response to your first question, to the extent the Act can be construed as authorizing revenue bonds to be repaid with tax dollars (which seems to be the basis of your first question), the Act is constitutionally suspect. *Page 8 
Question 2 — If so, are there any other legal infirmities with thisAct?
It is unnecessary to answer this question in light of my response to Question 1 above.
Question 3 — Would having an election to issue these bonds cure anyconstitutional or other legal infirmities?
Counties and cities wishing to issue bonds must do so with constitutional authority. See again, Arkansas Constitution, art. 16, § 1 and Amendments 62, 65 and 78. Act 1980 of 2005 and the subchapter it amends authorize the issuance of "revenue bonds" under Amendment 65 without the necessity of an election. To the extent your question inquires as to the possibility of a city or county issuing bonds backed by taxes to accomplish a project involving energy efficiency, the city or county must look to other constitutional and statutory authorization. It may be possible to issue tax-backed bonds using a different statutory subchapter that provides for an election on the question. As the State's chief legal officer, however, I am not the appropriate official to offer legal advice to counties or cities in this regard. Consultation with the city or county's normal legal counsel or bond counsel is advisable on this issue.
Question 4 — Could Amendment 78 financing be used instead of thefinancing contemplated by this Act?
In my opinion the answer to this question is "yes," assuming all the restrictions and requirements of Amendment 78 are observed. The relevant section of Arkansas Constitution, Amendment 78 (Section 2), provides in pertinent part as follows:
 (a) For the purpose of acquiring, constructing, installing or renting real property or tangible personal property having an expected useful life of more than one (1) year, municipalities and counties may incur short-term financing obligations maturing over a period of, or having a term, not to exceed five (5) years. . .
 * * * *Page 9 The aggregate principal amount of short-term financing obligations incurred by a municipality or a county pursuant to this section shall not exceed five percent (5%) of the assessed value of taxable property located within the municipality or two and one half percent (2.5%) of the assessed value of taxable property located within the county, as determined by the last tax assessment completed before the last obligation was incurred by the city or county. The total annual principal and interest payments in each fiscal year on all outstanding obligations of a municipality or a county pursuant to this section shall be charged against and paid from the general revenues for such fiscal year, which may include road fund revenues.
(b) As used here:
 (1) "Short-term financing obligation" means a debt, a note, an installment purchase agreement, a lease, a lease-purchase contract, or any other similar agreement, whether secured or unsecured; provided, that the obligation shall mature over a period of, or have a term, not to exceed five (5) years. . . .
See also, A.C.A. § 14-78-101 to-110 (Supp. 2007) (the "Local Government Short-Term Financing Obligations Act of 2001).
Assuming all the above requirements are met, the answer to your fourth question is in my opinion "yes." The question of whether Amendment 78 financing might be used to accomplish any particular "performance-based efficiency project" will of course depend upon all the facts and circumstances surrounding the project. Again, consultation with the city or county attorney, or other specially retained bond or financial counsel is advisable.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
[1] The prohibition against interest-bearing evidences of indebtedness is contained in the original first section of Art. 16, § 1 of the Arkansas Constitution. This section remains in effect, notwithstanding the fact that Art. 16, § 1 was superseded by Amendment 13, which was in turn superseded by Amendment 62 to the Arkansas Constitution. See Cityof Hot Springs v. Creviston, 288 Ark. 286, 705 S.W.2d 415 (1986).
[2] "Revenue bonds" is defined in the subchapter as meaning ". . .all bonds, notes, certificates or other evidences of indebtedness the repayment of which is secured by user fees, charges or other revenues other than assessments for local improvements and taxes." A.C.A. §14-164-402(17) (Supp. 2007).
[3] "Efficiency savings" is defined in the subchapter as follows:
 "Efficiency savings" means the savings in operational cost realized by the issuer as a result of a performance-based efficiency project, which are capable of being verified by comparing the applicable project's annual operational cost after the implementation, construction, and installation of the performance-based efficiency project with:
 (A) The applicable project's actual annual operational cost before the implementation, construction, and installation of the performance-based efficiency project; or
 (B) In the case of a new performance-based efficiency project, the applicable project's projected annual operational cost without the implementation, construction, and installation of the performance-based efficiency project as determined by a licensed professional engineer not affiliated or associated with the qualified efficiency engineering company. . . .
[4] "Project revenues" are defined as "revenues derived from the capital improvements financed, in whole or in part, with the proceeds of bonds issued under this subchapter. . . ." A.C.A. § 14-164-402(14). *Page 1